UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEYONTAE STINSON,

                Plaintiff,

v.                                                            Case No. 23-cv-1390-bhl

TRISTAN RETZLAFF,

                Defendant.

## DECISION AND ORDER

Plaintiff Deyontae Stinson, who is representing himself, is proceeding on an Eighth Amendment claim in connection with allegations that Defendant Sergeant Tristan Retzlaff was deliberately indifferent towards his mental health needs at the Green Bay Correctional Institution on August 3, 2023. Dkt. Nos. 1 & 9. On August 1, 2024, Sgt. Retzlaff filed a motion for summary judgment. Dkt. No. 16. Because no reasonable jury could conclude that Sgt. Retzlaff was actually aware of an "imminent" risk of self-harm to Stinson, the Court will grant his motion for summary judgment and dismiss this case.

## UNDISPUTED FACTS

At the relevant time, Stinson was an inmate at the Green Bay Correctional Institution, where Defendant Retzlaff was a Bathhouse Sergeant. Dkt. No. 18, ¶¶1, 2, & 5. On August 3, 2023, at around 2:23 p.m., the institution issued an "emergency count." *Id*., ¶6. An emergency count is a rare occurrence at the institution. *Id*., ¶¶7, 8, & 16. It only occurs in response to a serious security incident, such as suspicion of an inmate escape, and is one of the highest priority tasks at the institution. *Id*. In response to the emergency count, Sgt. Retzlaff left his normal post

in the Bathhouse and went to the South Cell Hall, where Stinson was housed, to help with the emergency count in that unit. *Id.,* ¶¶6 & 9. Prior to going to the South Cell Hall that day, Sgt. Retzlaff did not know Stinson or have any information about his mental health history. *Id.*, ¶11.

According to Sgt. Retzlaff, when he got to Stinson's cell for the emergency count, Stinson said that he was feeling suicidal and wanted to speak to someone in the Psychological Service Unit. *Id.,* ¶12. Sgt. Retzlaff asked if Stinson had a specific plan to self-harm; and Stinson said no. *Id.,* ¶13. Sgt. Retzlaff then told Stinson that he needed to finish the emergency count and would contact unit staff immediately afterwards. *Id.,* ¶14. The entire interaction took about 15 seconds. *Id.*, ¶10; *see also* Dkt. No. 20-2. Sgt. Retzlaff states that he did not believe Stinson was at imminent risk of self-harm because he did not appear agitated or upset when they communicated; Stinson affirmatively stated that he had no specific plans to self-harm; Stinson was not actively self-harming at the time; Stinson did not show Sgt. Retzlaff any contraband that he could use to self-harm; and Sgt. Retzlaff did not see any cuts, blood, or any other form of injury on Stinson at that time. Dkt. No. 18, ¶¶13, 17, & 18. After Sgt. Retzlaff finished his emergency count, he notified the unit's Secure Workstation Officer (who is responsible for monitoring cameras, monitoring movement, and communicating with wing officers and security supervisors) of Stinson's statements. *Id.,* ¶¶19-21.

Stinson's version of events is essentially the same. He explains that he was suicidal on August 3, 2023 because he had a 25&½ year sentence. Dkt. No. 26, ¶6. He states that he had already served about 7&½ years of that sentence, and he had already lost so much during that time including his wife, his house, and all of his money. *Id*. He states that he told Sgt. Retzlaff that he was going to "kill himself;" and Sgt. Retzlaff stated that "he would call the lieutenant but walked

away from Stinson." Dkt. No. 25, ¶¶13 & 15. Stinson states that no one arrived immediately to help him after he talked to Sgt. Retzlaff. Dkt. No. 26, ¶20.

About 90 minutes later, at around 4:00 p.m. that day, Stinson self-harmed with a razor blade. Dkt. No. 1 at 2. Another correctional officer saw him and took him to the Health Services Unit for medical care. *Id*. According to Stinson's medical records, he had two one-inch horizontal lacerations to his left arm. Dkt. No. 18, ¶25. The lacerations were not actively bleeding or draining and were treated with gauze and Tegaderm dressing. *Id.*, ¶¶26 & 27. This incident was the first time Stinson reported and was treated for self-harm. *Id.*, ¶¶33 & 34. But since then, he has reported at least two times that he was going to cut himself if he did not get various types of property he wanted. *Id.*, ¶¶35-40.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

3

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Prison officials violate the Eighth Amendment when their conduct demonstrates deliberate indifference to a substantial risk of serious harm to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To survive summary judgment on an Eighth Amendment deliberate indifference claim, Stinson must establish that: "(1) the harm that befell him was objectively, sufficiently serious, and posed a substantial risk to his health or safety, and (2) the individual defendant[] [was] deliberately indifferent to the substantial risk to his health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006) (citing *Farmer*, 511 U.S. at 832). Genuine suicidal ideation is an objectively serious medical condition, *see Lisle v. Welborn*, 933 F.3d 705, 716 (7th Cir. 2019), and a prison official cannot ignore or fail to treat a prisoner who is genuinely suicidal, *see Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020). The risk of suicide is a grave one, "not one that today's society chooses to tolerate." *Quinn v. Wexford Health Sources, Inc.,* 8 F.4th 557, 565 (7th Cir. 2021).

"Where the harm at issue is a suicide or attempted suicide, the second, subjective component of an Eighth Amendment claim requires a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide [,] and (2) intentionally disregarded the risk." *Collins*, 462 F.3d 757 at 761 (citing *Matos el rel. Matos v. O'Sullivan,* 335 F.3d 553, 556 (7th Cir. 2003). The defendant must be "cognizant of the significant likelihood that an inmate may imminently seek to take his own life[.]" *Id*. (citing *Sanville v. McCaughtry*, 266 F.3d 724, 737 (7th Cir. 2001). The evidence must show that the defendant prison official "knew of a significant likelihood that the inmate would imminently attempt" self-harm or suicide then "failed to take reasonable steps to prevent it." *Davis-Clair v. Turck*, 714 F. App'x

4

605, 606 (7th Cir. 2018). A "risk of future [self-harm] must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can be liable for ignoring that risk." *Id.* (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008)). Additionally, a defendant with knowledge of a risk need not "take perfect action or even reasonable action." *Cavalieri v. Shepard,* 321 F.3d 616, 622 (7th Cir. 2003). Instead, the evidence must show "callous disregard" for an inmate's wellbeing. *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

Based on the undisputed facts, no reasonable jury could conclude that Sgt. Retzlaff was actually aware of an "imminent" risk of suicide or self-harm. Sgt. Retzlaff reports that Stinson did not present as agitated or upset when they spoke and thus he did not believe Stinson was in imminent risk of self-harm. Moreover, Sgt. Retzlaff indicates that Stinson affirmatively stated that he had no specific plans to self-harm; Stinson was not actively self-harming when they interacted; Stinson did not show Sgt. Retzlaff any contraband that he could use to self-harm; and Sgt. Retzlaff did not see any cuts, blood, or any other form of injury on Stinson at that time. In response, Stinson purports to "dispute" these facts but he does so by simply asserting his disagreement with Sgt. Retzlaff's account. He offers no specific factual evidence that might support a dispute over Retzlaff's account. *See* Dkt. No. 25, ¶¶17-18. Stinson does not provide evidence or explain, for example, what he allegedly said or did to show agitation (i.e., yelling, screaming, crying, etc.); what specific plan he allegedly communicated regarding self-harm (i.e., whether he planned to cut himself, overdose on medication, hang himself, etc.); the manner in which he was allegedly actively self-harming; what contraband he allegedly showed to Sgt. Retzlaff; or the nature of the injury that was allegedly present. Instead, Stinson's only specific allegation regarding the 15 second interaction is that he told Sgt. Retzlaff that he wanted to "kill himself," a statement consistent with Sgt. Retzlaff's report that Stinson said he was suicidal. But a vague report of suicidal ideation is not enough to make the future harm "imminent" or "sure or very likely" to occur. *See e.g., Davis-Clair*, 714 F. App'x at 606. In the absence of evidence establishing that

5

Stinson had communicated a specific plan to self-harm, showed contraband that he would use to self-harm, and/or showed an active wound or incapacitated state, no reasonable jury could conclude that Sgt. Retzlaff was actually aware of an "imminent" risk of self-harm. Sgt. Retzlaff's decision to finish emergency count and *then* report Stinson's words to the Secure Workstation Officer was reasonable under the circumstances and did not amount to "callous disregard" for Stinson's wellbeing. This is true even if Sgt. Retzlaff's determination that Stinson was not at imminent risk of self-harm was ultimately "incorrect," "negligent," or even "gross negligence." *See e.g. Williams v. Van Buren*, No. 22-2918, 2023 WL 3451407, at *2 (7th Cir. May 15, 2023) ("Even if [Defendant's] determination that [Plaintiff] was not at risk of self-harm was incorrect or negligent, negligence and even gross negligence do not support the subjective component of an Eighth Amendment claim.").

Stinson also attempts to dispute Sgt. Retzlaff's statement that he notified the Secure Workstation Officer of Stinson's words immediately after emergency count was over. Dkt. No. 25, ¶19. Stinson states that the Institution Complaint Examiner "affirmed" his inmate complaint regarding the events of that day because the Secure Workstation Officer reported to the ICE that he didn't remember speaking to Sgt. Retzlaff that day. *Id*. But even assuming Stinson is correct—that Sgt. Retzlaff did not (or forgot) to tell the Secure Workstation Officer of Stinson's words immediately after emergency count was over—his Eighth Amendment claim would nevertheless fail because nothing in the record shows that Sgt. Retzlaff acted with "callous disregard" for Stinson's wellbeing. Indeed, there are no allegations that Sgt. Retzlaff said unkind words to Stinson during the 15 second interaction, expressed apathy or disinterest towards his condition, or encouraged his suicidal ideation. Under these circumstances, Sgt. Retzlaff's alleged failure to report a vague assertion of suicidal ideation following a hectic event at the institution would at most amount to negligence, not deliberate indifference. Therefore, Sgt. Retzlaff is entitled to summary judgment and the Court will dismiss the case.

6

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 16) is **GRANTED**; and this case is **DISMISSED**. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on January 27, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

---

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.